Patrick W. SIMMONS, McLay Grain
Company and Edenfruit Products
Company, Petitioners,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents,

and

Chicago and North Western
Transportation Company,
Intervenor–Respondent.

Nos. 88–3211, 89–1961.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 14, 1989.

Decided April 16, 1990.

Gordon P. MacDougall, Washington,
D.C., John J. Naughton, Henslee, Monek &
Henslee, Stuart F. Gassner, Myles L. To-
bin, Chicago Northwestern Ry. Co., Law
Dept., Chicago, Ill., for petitioners.

Anton R. Valukas, U.S. Atty., Thomas F.
McFarland, Jr., Belnap, Spencer, McFar-
land, Emrich & Herman, Robert S. Burke,
I.C.C., Washington, D.C., William Red-
mond, I.C.C., Chicago, Ill., Virginia Stras-
ser, I.C.C., Edwin Meese, U.S. Atty. Gen.,
Dept. of Justice, Civ. Div., Appellate Sec-
tion, Washington, D.C., Catherine G. O'Sul-
livan, David Seidman, Dept. of Justice, An-
titrust Div., Appellate Section, Washington,
D.C., for respondents.

Before CUMMINGS, FLAUM, and
MANION, Circuit Judges.

MANION, Circuit Judge.

Petitioners Patrick W. Simmons, McLay
Grain Company, and Edenfruit Products
Company, have asked this court to review
the action of the Interstate Commerce
Commission (ICC), which declined to revoke
the "out-of-service" class exemption for the

abandonment of Chicago and North Western Transportation Company's (C & NW's) Chemung–Poplar Grove line. For reasons which follow, the petitions are dismissed for lack of standing.

## I. BACKGROUND

For a number of years, C & NW has sought to abandon its Illinois line between Harvard and South Beloit, a distance of 23.4 miles. C & NW filed its first abandonment application on March 31, 1981, contingent upon C & NW acquiring track rights over a line owned by Chicago, Milwaukee, St. Paul and Pacific Railroad Company (MILW) between Clinton Junction and Beloit, Wisconsin. A number of shippers filed protests. C & NW withdrew its application when MILW indicated it would abandon the Clinton Junction–Beloit line. A train derailed east of Poplar Grove in November 1986. The resulting damage has never been repaired. C & NW next filed for abandonment of the Harvard–South Beloit line on April 21, 1987, again encountering substantial opposition. C & NW again withdrew its application. In permitting C & NW to withdraw its abandonment request for the second time, the ICC stated that in the future C & NW would be required to comply with the System Diagram Map provisions, and file a notice of intent and updated evidence in any new abandonment application.

Rather than file a new application for abandonment of the Harvard–South Beloit line, C & NW instituted a series of transactions. These efforts were (1) the transfer of the eastern 3.5–mile Harvard–Chemung segment for operation by Chicago–Chemung Railroad Corporation (CCRC); (2) use of the out-of-service class abandonment exemption to secure automatic abandonment of the adjoining middle 6.5–mile Chemung–Poplar Grove segment; and (3) announcement of a forthcoming application to abandon the remaining western 13.4–mile Poplar Grove–South Beloit segment. On March 14, 1988, the ICC denied Patrick Simmons' petition to revoke CCRC's use of

the class exemption for non-carrier acquisition of rail lines with respect to the eastern Harvard–Chemung segment. On September 12, the ICC denied Simmons' motion to reopen its decision not to revoke. Simmons subsequently filed a petition for review in this court. As to the 6.5–mile Chemung–Poplar Grove segment, C & NW invoked the abandonment class exemption for out-of-service lines. This class exemption was available not on the basis of the derailment, but instead because all traffic over the 6.5–mile segment within two years was overhead bridge business. No local business (business from shippers and receivers actually located on the segment) operated on the 6.5–mile segment. The exemption requires only that (1) no local traffic has moved for at least two years; (2) any overhead traffic can be rerouted over other lines; and (3) no user of rail service on the segment has complained. 49 C.F.R. § 1152.50 (1989 ed.).

C & NW's notice of exemption asserted that no local traffic was handled on the 6.5–mile segment during the past two years, all overhead traffic was moving over an alternate route over the past one and one-half years, and no formal complaints regarding cessation of local service had been filed. The ICC gave public notice of C & NW's exercise of the exemption, stating petitions for stay and for reconsideration could be filed. McLay Grain Company, Edenfruit Products Company, and Patrick W. Simmons [1] filed a joint petition for stay of the abandonment exemption. McLay Grain Company, situated at Poplar Grove, formerly shipped about 600 cars per year, but has not shipped any traffic by rail since the 1970s. McLay claims it would suffer competitive injury if Seegers Grain Company at Chemung should acquire and McLay should lose rail service. Edenfruit Products Company has a private rail side track and unloading facilities at Poplar Grove. It shipped 15 carloads in 1978, 25 carloads in 1979, but only one carload in the past four years. Since the November 1986 derailment, C & NW has rerouted

---

1. Simmons is the Legislative Director of the United Transportation Union (UTU), some members of which are alleged to work for C & NW.

eastbound Poplar Grove traffic to South Beloit and from there over another route through Beloit, Wisconsin to Harvard, Illinois, adding approximately 32 miles to its Poplar Grove to Chicago operations. Neither Edenfruit nor McLay is situated on the 6.5–mile segment; the two are located a short distance to the west.

The petitioners claim that the abandonment of the Chemung–Poplar Grove segment would prejudice the ultimate disposition of the ongoing Harvard–Chemung proceeding. They also claim the stated use of the abandonment class exemption for the Chemung–Poplar Grove segment constituted an abuse of the class exemption because of its relationship with other C & NW claims for line disposition.

On November 3, 1988, the petitioners filed a petition to revoke and/or for reconsideration of the Chemung–Poplar Grove abandonment class exemption. The ICC denied the stay request by a 3–1 vote. The ICC majority stated that the use of the class exemption is fully consistent with the rail transportation policy so as to allow C & NW to abandon the least profitable segment, such as the one which has been out of service, and that at this point it is speculative whether C & NW will file an application to abandon the Poplar Grove–South Beloit segment or whether abandonment would be authorized. Moreover, if the Poplar Grove–South Beloit abandonment is filed and if it has environmental implications which carry over to the area between Chemung and Poplar Grove, those implications can be addressed at that time. The ICC majority stated it was unclear how petitioners would be prejudiced by the class exemption in the Harvard–Chemung case or a forthcoming South Beloit–Poplar Grove case. The ICC majority also reasoned that the public interest arguments had already been balanced in the class exemption itself.

On May 8, 1989, the ICC denied the petition for revocation and/or reconsideration by a 3–2 vote. The ICC majority concluded that even if C & NW retained the Harvard–Chemung line, it would have no incentive to repair the derailment in order to continue the Chemung–Poplar Grove operation. The ICC's decision faulted petitioners for not showing how segmented handling of the Harvard–South Beloit line could subject shippers to market abuse since truck service is available and McLay Grain Company has not used C & NW since the 1970s. The ICC found that the Poplar Grove complaints filed in the 1987 C & NW abandonment case did not constitute a formal complaint within the out-of-service regulations during the prior two-year period because the complaints were against abandonment of the entire Harvard–South Beloit line.

Finally, the ICC addressed the environmental issue. The ICC stated that it may approve a single application without first completing a comprehensive impact statement on all environmentally interrelated regionwide proposals. The ICC defended limiting its environmental review solely to the Chemung–Poplar Grove segment rather than to the Chemung–South Beloit line because Chemung and Poplar Grove are logical termini, the segment is substantially independent in terms of its utility, and allowing the segment's abandonment does not foreclose the opportunity to consider an alternative treatment of subsequently proposed segment abandonments.

Patrick Simmons, McLay Grain Company, and Edenfruit Products Company now file a petition for review with this court. The petitioners urge that we overturn the ICC's orders on a number of grounds: the class exemption as applied in a particular situation is subject to challenge on public interest grounds; the ICC misconstrues the opinions of the Seventh Circuit regarding line segments in ICC abandonment proceedings; the ICC's failure to render findings for the entire Harvard–South Beloit line prior to permitting abandonment of the Chemung–Poplar Grove segment is arbitrary and capricious agency conduct; the ICC's finding regarding abuse of market power is arbitrary and capricious; the ICC's finding on track repairs is arbitrary and capricious; and the ICC's environmental analysis is deficient and requires a remand.

## II. ANALYSIS

■ Although substantial evidence in the record appears to support the ICC on the merits, we first must determine whether petitioners have standing. No party raised this issue in its briefs. Nevertheless, the court may consider standing on its own motion since it impacts subject matter jurisdiction. *United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 573 & n. 2 (3d Cir.1980). If the petitioners have no standing, there is no case or controversy, and the court does not have the power to entertain the case under Article III of the Constitution. *City of Evanston v. Regional Transportation Authority*, 825 F.2d 1121, 1123 (7th Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988).

"In order for a party to have standing to bring suit in federal court, three requirements must be met: (1) the party must personally have suffered an actual or threatened injury caused by the defendant's allegedly illegal conduct, (2) the injury must be fairly traceable to the defendant's challenged conduct, and (3) the injury must be one that is likely to be redressed through a favorable decision." *Id.*, citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

■ The petitioners in this case allege that they will suffer competitive injury by not being able to ship along the abandoned line, whereas their competitors will be able to utilize rail shipment. Furthermore, they challenge the ICC's environmental analysis. Finally, Patrick Simmons alleges that members of the UTU (which he represents) will lose their jobs due to the abandonment of the line.

An allegation of competitive injury is sufficient to satisfy the first prong of the standing test. However, the injury is not traceable to the ICC's action in this case. Petitioners challenge the ICC's Notice of Exemption, its decision denying a stay of the abandonment, and its decision denying petitions for reconsideration and revocation of the abandonment exemption. These actions pertain only to the question of whether C & NW may abandon the line; they are unrelated to the question of whether C & NW must open the line for use by the petitioners. The November 1986 derailment damaged the 6.5–mile stretch of track which C & NW hopes to abandon. Therefore no traffic used that track for at least a year and one-half before the institution of this action before the ICC. The ICC has held that C & NW would have no incentive to repair the derailment on the track. The petitioners suggest that this finding is inconsistent with the ICC's previous statements that repair of the derailment was merely unlikely. Even if this is true, we note that the petitioners have the burden to allege facts sufficient to support their standing. *United Presbyterian Church v. Reagan*, 738 F.2d 1375 (D.C.Cir.1984). There is no evidence in the record or even any allegation that C & NW would likely repair the derailment if the request to abandon were denied. Any suggestion that C & NW would reopen the damaged track is pure speculation, and "unadorned speculation will not suffice to invoke the federal judicial power." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 44, 96 S.Ct. 1917, 1927, 48 L.Ed.2d 450 (1976). See also *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

To summarize, the most this court can do in response to petitioners' request is to stop C & NW's abandonment of the track; we cannot force C & NW to repair the damaged line. Since only the repair of the damaged line will suffice to redress the injuries alleged by petitioners, petitioners have failed to meet the third prong of the standing test outlined in *City of Evanston*.

■ The petitioners also challenge the ICC's environmental analysis. Injury to petitioners' environmental interests is sufficient to satisfy Article III's requirement of an injury in fact. "Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal

protection through the judicial process." *Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972). "But the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id.* at 734–35, 92 S.Ct. at 1365–66. In *Sierra Club,* the United States Forest Service decided to allow development of Mineral King Valley in California for recreational purposes. The Sierra Club, an organization interested in environmental protection, sued the Secretary of the Interior to stay approval of the project. The Sierra Club claimed it had "a special interest in the conservation and the sound maintenance of the national parks, game refuges and forests of the country." *Id.* at 730, 92 S.Ct. at 1363. The Sierra Club alleged the development "would destroy or otherwise adversely affect the scenery, natural and historic objects and wildlife of the park and would impair the enjoyment of the park for future generations." *Id.* at 734, 92 S.Ct. at 1366. The Supreme Court held that the alleged harm might be an injury in fact to members of the public, but nevertheless denied standing because the Sierra Club never alleged that any of its members would be individually injured by the development.

In this case, the petitioners have not alleged either at the administrative level or on appeal that they will be adversely affected by any environmental damage caused by the abandonment. In fact, the petitioners have not alleged any specific environmental damage; they only argue that the ICC did not use the proper procedure in making its environmental impact findings. Thus the environmental issue cannot provide the basis for the petitioners' standing in this case.

Finally, Patrick Simmons alleges that UTU members will lose their jobs due to the abandonment. This injury satisfies all three prongs of the Article III standing requirement. However, standing is also limited by prudential concerns.[2] One requirement of prudential standing is the "zone of interest" test:

The zone of interest test is a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision. In cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.

*Clarke v. Securities Industry Association,* 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987). As this court holds in *Simmons v. Interstate Commerce Commission,* 900 F.2d 1018 (7th Cir.1990) the companion to this case, rail employees' interests in retaining their jobs are not within the zone of interests protected by the Interstate Commerce Act.

Therefore none of the asserted interests —competitive, environmental, or labor— can serve as a basis for the petitioners' standing in this case. For this reason, petitioners' action is dismissed for lack of standing.

DISMISSED.

---

**2.** Prudential limitations "deny standing as a matter of judicial prudence rather than constitutional demand." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3531.7.